UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK JULIAN,

    Plaintiff,

v.                                                                     Case No: 8:16-cv-2774-T-36AEP

EXLITES HOLDINGS
INTERNATIONAL, INC., CLAIRE
SINGLETON, CHRISTOPHER DAVIES
and JOSEPH CHUNG,

    Defendants.
_____/

# **O R D E R**

This matter comes before the Court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue as to the Amended Complaint (Doc. 21). In the motion, Defendant Claire Singleton argues that this Court lacks personal jurisdiction over her because she is a Utah resident who has spent less than four days in Florida in the past ten years, she has had no active business activity in Florida during the relevant time periods at issue, and otherwise has had no expectation of being haled into Florida courts for anything in her personal or business life. She also contends that, ultimately, Plaintiff's Amended Complaint is full of vague and conclusory allegations, of which Count 3 fails to state a claim. The Court, having considered the motion and being fully advised in the premises, will grant Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue as to the Amended Complaint.

I. **STATEMENT OF FACTS**[1]

Plaintiff Mark Julian is the majority shareholder and sole member of the board of directors of the Defendant Exlites Holdings International, Inc. ("Exlites"). Doc. 17 at 18-19. In his Amended Complaint, he accuses Defendant Exlites of breaching an agreement and Defendants Claire Singleton, Christopher Davies and Joseph Chung[2] of engaging in fraudulent behavior meant to deprive him of his majority shareholder status and otherwise commit fraud. *See, e.g. id.* at ¶¶ 9, 10, 23, 26. Singleton received a judgment against Exlites in December 2012 for 37,050,000 common shares and 8,000,000 preferred shares. *Id.* at ¶ 20. On June 4, 2013, Singleton filed Exlites' Articles of Amendment with New Mexico's Secretary of State which authorized the issuance of additional shares. *See id.*[3] As of June 4, 2013, preferred shares did not have voting rights. *Id.* at ¶ 21. On or about October 2013, Singleton sold the common and preferred shares (100% of her holdings) to companies controlled by Davies and Chung. *Id.* at ¶ 22. On December 23, 2014, Julian did a "reverse merger" with the corporation and became the majority shareholder. *Id.* at ¶ 24.

On March 2, 2015, Singleton, together with Davies and Chung, filed fraudulently back-dated amendments with New Mexico's Secretary of State which "changed the non-voting preferred shares to convert to 10 common shares for 1 preferred share with full voting rights." *Id.*

---

[1] The facts are derived from Plaintiff's Amended Complaint (Doc. 17), the allegations of which the Court must accept as true in ruling on the instant motion, unless otherwise noted. *See Linder v. Portocarrero*, 963 F. 2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

[2] Plaintiff did not serve Davies and Chung within the time required for service. *See* Fed.R.Civ. P. 4(m), Docs. 44, 45. Therefore, the Court dismissed them without prejudice. Doc. 46.

[3] The Amended Complaint references an Exhibit B, but all of the attachments filed with the Amended Complaint are labeled "Exhibit A."

at ¶ 26. At the time of this transaction, Singleton, Davies, and Chung were not associated with Exlites and did not own any stock of any kind. *Id*.

Singleton has been mailing documents claiming to be the majority shareholder and attempting to change the board of directors through the United States Postal Service ("USPS"). *See id*. at ¶ 15. On September 21, 2016, Singleton sent a notice claiming to be the majority shareholder based on her ownership of 8 million preferred shares with voting rights. *Id*. at ¶ 27. Singleton, Davies, and Chung sent out this notice together through the USPS and knew it was fraudulent. *Id*. Singleton, Davies and Chung have mailed fraudulent documents using the USPS to Florida. *Id*. at ¶ 44. They are using Singleton's home address as the company address for Exlites. *Id*. at ¶ 47. Singleton, Davies and Chung appear to operate this "criminal pattern" on a continuous basis. *Id*. Further, Singleton, Davies, and Chung have been selling fake preferred Exlites stock to unsuspecting individuals pursuant to 18 U.S.C. § 1001. *Id*. at ¶ 28.

Julian brings three causes of action: Count 1 against Exlites for breach of contract, count 2 against Singleton, Davies, and Chung for fraud, and count 3 against Singleton for fraud through the USPS.

## II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

The plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant by presenting enough evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Id*. Where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in the plaintiff's favor. *Id.* at 1514. And if the defendant sufficiently challenges the plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint. *Structural Panels, Inc. v. Texas Aluminum Ind., Inc.*, 814 F.Supp. 1058, 1064 (M.D. Fla. 1993) (citing *Prentice v. Prentice Colour, Inc.,* 779 F. Supp. 578, 583 (M.D. Fla. 1991)).

### III. DISCUSSION

#### a. The Pleadings

The Amended Complaint alleges that jurisdiction is evident from "the nexus and the events occurring in Florida and consent by the majority of parties as residents of Florida." Doc. 17 at ¶ 1. Julian, Davies, and Chung are Florida residents. *Id*. at ¶¶ 2, 5, 6, 8. Singleton is a Utah resident. *Id*. at ¶ 4. And Exlites is a New Mexico corporation and is registered as a foreign corporation with the Florida Secretary of State, doing business in Florida. *Id*. at ¶ 3. Julian alleges that Singleton is a majority shareholder in several corporations which do business in Florida, thereby conferring jurisdiction in this Court. *Id*. at ¶ 9. He also alleges that the fraud perpetrated by the Defendants was "concocted and executed in Florida." *Id*. at ¶ 10. The Amended Complaint alleges in Count 2

that the Court has jurisdiction over the claims pursuant to "18 U.S. code chapter 47 section 1001."[4] Doc. 17 at ¶ 32.

It is undisputed that Singleton is a resident of Utah. Doc. 17 at 2; Doc. 21-1[5] at ¶ 3. She has spent less than four days in Florida in the last ten years, and these occasions were for personal visits. Doc. 21-1 at ¶ 4. She had no active business participation in Florida during any of the material times at issue. *Id*. at ¶ 4. Singleton was involved in litigation relating to her ownership interest in Exlites in the case styled *Singleton v. Exlites Holdings International, Inc*., *et al*., Case No. 2:11-cv-00102, Utah District Court. In that case, she sued Exlites for its failure to pay her for work performed in Utah and she obtained a money judgment which she converted to stock. Doc. 21 at 2; Doc. 21-1 at ¶ 6. She argues that the facts as presented in that case support the contention that Exlites did substantial business in Utah. Although she admits to submitting Exlites' corporate filings in New Mexico, she maintains that she had no involvement with the filings with the Florida Secretary of State. *Id*. at ¶7. Plaintiff filed Exlites' registration as a foreign business in the State of Florida on May 22, 2015. *Id*. at ¶ 9.[6]

Singleton contends that Julian does not sufficiently allege that this Court can exercise personal jurisdiction over her. She argues that the Florida Long-Arm Statute does not confer jurisdiction over her because she does not reside or maintain an office in Florida and none of the circumstances described in § 48.193(1)(a)(2), Florida Statutes, apply here. The requirements of the Due Process Clause of the Fourteenth Amendment are not satisfied here either, she argues, because she only has sporadic and isolated contacts with Florida which is insufficient to show

---

[4] 47 U.S.C. § 1001 relates to "Interception of Digital and Other Communications" and contains definitions for the subchapter of the statute.
[5] Affidavit of Claire Singleton in Support [of] Motion to Dismiss attached as Exhibit A to the Motion.
[6] The Affidavit references "Schedule 1" but no attachment was filed with the Affidavit.

"purposeful availment of the benefits of the state." Further, she argues, Exlites' registration as a foreign corporation doing business in Florida is insufficient to confer jurisdiction over her. And she argues that the assertion of jurisdiction over her would not comport with "fair play and substantial justice" because her alleged acts relate to her filings in New Mexico, which require no interpretation, evaluation, or application of any Florida laws or regulations.

### b. Personal Jurisdiction Analysis

A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *See Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1988); *see also Lamb v. Turbine Designs, Inc.,* 207 F.3d 1259, 1261 (11th Cir. 2000). The Court's analysis of the propriety of the assertion of personal jurisdiction is a two-step inquiry. First, the Court must determine "whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.,* 358 F.3d 1312, 1319 (11th Cir. 2004). Second, the Court must examine "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### i. Florida's Long-Arm Statute Analysis

The Court begins by analyzing whether Florida's Long-Arm Statute has been satisfied. Florida's Long-Arm Statute permits jurisdiction over non-residents under two circumstances. First, a non-resident submits itself to Florida's specific jurisdiction by performing any of the acts enumerated by the statute. Fla. Stat. §§ 48.193(1)(a)(1)-(9). Second, a non-resident submits itself

to Florida's general jurisdiction by "engag[ing] in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise ... whether or not the [plaintiff's] claim arises from that activity." Fla. Stat. § 48.193(2). Plaintiff has not established that the Court has either specific or general jurisdiction over Singleton.

### 1. Specific personal jurisdiction

In analyzing the issue of specific jurisdiction, a court must first determine whether one of the acts set out in section 48.193(1) is applicable to the case at hand. In the event that this first prong of examining specific jurisdiction is met, a court must then address the due process prong. The Eleventh Circuit has comprehensively discussed this standard. And the United States Supreme Court, in a handful of leading cases, laid out the proper due process standard for cases involving specific jurisdiction. In the interest of preserving "traditional notions of fair play and substantial justice" a state may exercise specific jurisdiction only over a defendant who has certain "minimum contacts" with the state. *Int'l Shoe Co.*, 326 U.S. at 316. This so-called "minimum contacts" rule is the "constitutional touchstone" for such jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The Supreme Court recently reiterated the importance of the "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" in the context of specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 2017 WL 2621322, *6 (U.S. June 19, 2017) (quoting *Goodyear*, 564 U.S. at 919).

Based on the allegations in the Amended Complaint, Plaintiff appears to assert the following bases for specific personal jurisdiction over Singleton: conducting business in Florida,

7

committing a tortious act in Florida and causing injury to person or property in Florida. *See* Doc. 17 at ¶¶ 3, 10, 15, 27, 44.[7] Florida's Long-Arm Statute provides in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.
> …
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
> a. The defendant was engaged in solicitation or service activities within this state; or
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a) 1-2, 6.

"In order to establish that a defendant is 'carrying on business' for the purposes of the Long-Arm Statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). Singleton's Affidavit defeats the notion that she conducted business in Florida separately or through Exlites. The alleged fraudulent actions either took place before Julian filed the registration in Florida, or at some unknown date. Taking the allegations as true, Singleton sold off her shares in October 2013, she

---

[7] "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998).

8

fraudulently backdated the filings with New Mexico in March 2015, and Julian registered Exlites as a corporation doing business in Florida in May 2015. And Singleton's Affidavit states that she does not have any active business participation in Florida during the "material times" at issue in this case. There is no evidence that Singleton carries on business in Florida. Given Singleton's Affidavit, Julian cannot merely rely on his allegations and he has offered no evidence to refute Singleton's Affidavit.

As to Singleton committing a tortious act in Florida, the Amended Complaint says she mailed a fraudulent document into Florida in conjunction with Davies and Chung, who are Florida residents. Although Julian asserts that the alleged fraud was "concocted and executed in Florida" there is no factual support for this conclusory contention in the Amended Complaint. The well pleaded allegations in the Second Amended Complaint do not establish that Singleton committed tortious acts within Florida.

Further, this section requires that the defendant's alleged acts or omissions "directly cause injury or damage within the state" which has not been alleged here. *Blumberg v. Steve Weiss & Co., Inc.*, 922 So. 2d 361, 364 (Fla. 3d DCA 2006). It is true that an out-of-state defendant's "telephonic, electronic, or written communications into Florida" are sufficient to trigger jurisdiction under the Long-Arm statute; but the cause of action must arise from those communications. *See Acquadro v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003) (finding jurisdiction under Fla. Stat. § 48.193(1)(a)(2) where an out-of-state defendant allegedly defamed a Florida resident during a phone call made into Florida).

Here, Julian refers to letters sent into Florida in Count 3. Although Singleton does not address Count 3 in her motion, the Court notes that Plaintiff brings this claim under 18 U.S.C. § 1001, which provides for *criminal prosecution* against someone who knowingly or willfully "(1)

falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry[.]" *Id*. at § (a)(1)-(3). *See Momot v. Dziarcak*, 114CV1527TJMTWD, 2016 WL 5256631, at *6 (N.D.N.Y. Sept. 22, 2016) ("The statute in question here is clearly a criminal statute, aimed at fraud and concealment with respect to a government agency, and contains no implication or suggestion of a private right of action. Courts examining this statute have concluded that the statute contains no implied right of a civil action."). Because Count 3 of Plaintiff's Amended Complaint fails to state a cognizable claim it will be dismissed.

Further, the facts in the Amended Complaint do not sufficiently allege that Singleton caused injury to a person or property in Florida. Singleton filed the corporate filings in New Mexico, the Amended Complaint does not provide dates of the other alleged acts, like the mailing of the fraudulent documents and soliciting of investors, nor does it specify which acts took place in Florida.[8] Further, in this case, jurisdiction does not exist under section 48.193(1)(a)(6), as this section does not permit jurisdiction over nonresidents for acts arising outside the state that cause *financial* injury within the state, in the absence of personal injury or property damage. *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991). Nor do the allegations otherwise qualify under this subsection.

Ultimately, Julian relies on vague and conclusory allegations which are insufficient to present a prima facie case of personal jurisdiction. *See Snow v. DirecTV, Inc*., 450 F.3d 1314, 1318 (11th Cir. 2006) (where plaintiff relied solely on vague and conclusory allegations to establish

---

[8] Plaintiff alleges that Singleton sent a notice claiming to be the majority shareholder of Exlites as late as September 21, 2016 through the USPS, but does not indicate from where or to whom the letter was sent. Doc. 17 at ¶ 27.

specific personal jurisdiction under the Florida Long-Arm Statute, he failed to establish a prima facie case of personal jurisdiction over non-resident defendant). Even if he had established a prima facie case, Plaintiff has not refuted Singleton's affidavit and there are not enough well pleaded allegations to reasonably infer that Singleton regularly conducts business, committed a tort or caused injury in Florida. Julian has not met his burden to demonstrate that this Court has personal jurisdiction over Singleton under the specific jurisdiction clause of the Florida Long-Arm Statute.

### 2. General personal jurisdiction

Unlike specific jurisdiction, Florida's general jurisdiction does not require the performance or occurrence of any particular act. General jurisdiction under the Florida Long-Arm Statute provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Florida courts construe "substantial and not isolated activity" to mean "continuous and systematic business contact" with the state. *Caiazzo v. American Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011).

The Supreme Court clarified the standard for general jurisdiction in *Daimler AG v. Bauman,* when it revisited the meaning of "continuous and systematic contact." 134 S. Ct. 746, 760 (2014). The Supreme Court noted that it is the "exceptional case" for a defendant to be "essentially at home" in a place other than its domicile. *See id*. at 761, n. 19. The Eleventh Circuit echoed this sentiment in *Carmouche v. Tamborlee Mgt., Inc*., stating that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Daimler*, 134 S.Ct. at 760).

In this case, the pleadings and evidence before the Court do not establish that Singleton's activities within Florida are so substantial as to render her essentially "at home" in this state and subject to suit on any claim. The pleadings and evidence suggest that Singleton had limited contact with Florida. And although Exlites is now a Florida corporation, her previous ownership in its stock alone is insufficient to confer jurisdiction. *See Schwartzberg v. Knobloch*, 98 So. 3d 173, 182 (Fla. 2d DCA 2012) ("[B]ecause the Appellants' only 'activity' in Florida is their indirect ownership interests in the nursing home's operating and management companies and because, as discussed below, they are not engaged in the day-to-day operations of the nursing home, we conclude that Ms. Knobloch did not establish that the Appellants are engaged in substantial and not isolated activity in Florida."). *See also Burris v. Green,* 3:12CV521-MCR-CJK, 2016 WL 5844165, at *8 (N.D. Fla. Aug. 26, 2016)*, report and recommendation adopted,* 3:12CV521-MCR-CJK, 2016 WL 5844481 (N.D. Fla. Sept. 30, 2016) (holding that although defendant had business interests in two Florida corporations, because he was not engaged in the day to day activities of those corporations, plaintiff did not establish general jurisdiction).

### i. Due Process Analysis

Even if the exercise of Florida's Long-Arm jurisdiction was proper under section 48.193, "[a] court can exercise personal jurisdiction only if the [defendant] maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Wendt v. Horowitz,* 822 So. 2d 1252, 1258 (Fla. 2002) (alteration in original) (quoting *Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.,* 752 So. 2d 582, 584 (Fla. 2000)). *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985)).

"To constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there." *Wallack v. Worldwide Machinery Sales, Inc.,* 278 F.Supp. 2d 1358, 1367–68 (M.D. Fla. 2003) (citing *Vermeulen v. Renault U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir. 1994)). The plaintiff bears the burden of establishing relatedness and purposeful availment, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

In Florida, where the complaint alleges that a foreign corporation and other conspirators committed a tortious act on Florida soil and subjected themselves to the jurisdiction of Florida courts; the complaint satisfies the constitutional requirements because it alleges sufficient minimum contacts between Florida and the non-resident defendants to satisfy due process concerns. *See Execu-Tech Bus. Sys., Inc.,* 752 So. 2d at 585 (approving *Wilcox,* 637 So. 2d 335). Plaintiff's Amended Complaint attempts to make these allegations, but falls far short. The allegations suggest that Singleton conspired with Davies and Chung (but not with Exlites) at unknown times to change the board membership without his consent and convert common stock fraudulently.

Here, Julian has not alleged sufficient facts to establish sufficient minimum contacts with Florida. Singleton's affidavit states that she has only been to Florida for personal reasons four times in the last ten years and that she has not taken any action on behalf of Exlites on Florida soil,

or had any business dealings during the material times. Julian has not demonstrated that Singleton's limited contacts with Florida gave rise to his cause of action against her, nor has he demonstrated that Singleton availed herself of the privilege of conducting activities in Florida, or that she should reasonably anticipate being haled into court in Florida based on her limited activities.

And under these facts, asserting personal jurisdiction over Singleton would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 320. In this analysis, the Court considers these factors: (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1358 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280 1288 (11th Cir. 2008)). Singleton has demonstrated the burden to her in litigating the case here since she has limited contact with Florida and all her business activities related to Exlites occurred in Utah or New Mexico. Florida has limited interest in adjudicating this dispute given the minimal activities of Exlites in Florida. The judiciary does not have a strong interest in resolving the dispute given that the related case took place in Utah and no extensive activity took place in this jurisdiction.

Based on the foregoing, the Court does not have personal jurisdiction over Singleton, and dismissal is proper.

### c. Subject Matter Jurisdiction

The dismissal of Singleton and Count 3 of this action raises concerns over the Court's subject matter jurisdiction. Specifically, Count 3 was based on 18 U.S.C. § 1011, which raised a federal question. Federal question jurisdiction is no longer available due to Count 3's failure to state a claim and Singleton's dismissal. Davies and Chung's dismissal leaves Plaintiff and Exlites

14

as the only remaining parties. Therefore, this case can only remain in this Court if diversity jurisdiction exists.

Federal courts "are obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004); *Univ. of South Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992, 1000 (11th Cir. 1982).

Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1)-(3). In order for diversity jurisdiction to exist under 28 U.S.C. § 1332, each defendant must be diverse from each plaintiff. *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). In this case, the Amended Complaint does not clearly establish the citizenship of the parties.

For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Although Exlites is incorporated in New Mexico, it is unclear where Exlites' principal place of business is located. *See* Doc. 17 at ¶ 3. Therefore, the Court cannot establish its citizenship for purposes of diversity.

And the Amended Complaint inadequately alleges the citizenship of Plaintiff. It simply alleges that Plaintiff is a resident of Pasco County, Florida (Doc. 17 at ¶ 2). However, "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). "Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile

is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002). Therefore, to properly allege citizenship, the Amended Complaint must allege more than residence.

Therefore, the Court will require Plaintiff to show cause why this case should not be dismissed for lack of subject matter jurisdiction.

**IV.  Conclusion**

The vague allegations in the Amended Complaint are simply insufficient to establish personal jurisdiction over Singleton. Even if Plaintiff met his initial burden, Singleton's affidavit unequivocally establishes that she lacks the minimum contacts with Florida to satisfy the due process requirements for the exercise of personal jurisdiction. Therefore, Singleton will be dismissed from this action. Singleton's dismissal and the lack of service over Davies and Chung moots Singleton's venue argument. Further, the Court questions whether it has subject matter jurisdiction over this case, and will evaluate that issue upon a proper showing of the citizenship of the remaining parties in this case.

Accordingly, it is **ORDERED**:

1.  Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Transfer Venue as to the Amended Complaint (Doc. 21) is **GRANTED**.

2.  Defendant Claire Singleton is **DISMISSED** from this action.

3.  Count III is **DISMISSED** with prejudice for failure to state a claim.

4.  Plaintiff is directed to **SHOW CAUSE** as to why this case should not be dismissed for lack of diversity jurisdiction. Defendant shall file a written response with the Court within

**FOURTEEN (14) DAYS** from the date of this Order. Failure to respond within the time provided will result in dismissal of this action without further notice.

**DONE AND ORDERED** in Tampa, Florida on July 10, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any